UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE AUTOMOBILE INDUSTRIES

Plaintiff,

v.

GROTH OLDSMOBILE/CHEVROLET

Defendant.
_____/

No. C-09-0465 PJH

**ORDER GRANTING MOTION TO DISMISS AND MOTION TO STRIKE**

    The motion of plaintiffs and counterdefendants Board of Trustees of the Automotive Industries Welfare Fund and the Automotive Industries Pension Fund, and Jim Beno ("Trustees") to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), and motion to strike portions of the prayer for relief and portions of the amended answer pursuant to Rule 12(f), came on for hearing before this court on July 14, 2010. The Trustees appeared by their counsel Michelle Sicula, Kimberly Hancock, and Caren Sencer; and defendant and counterclaimant Groth Oldsmobile/Chevrolet ("Groth") appeared by its counsel Joshua Cliff.

    Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

## BACKGROUND

    This is a case brought under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C §§ 1002, et seq., and § 301(a) of the National Labor Relations Act of 1947, 29 U.S.C. § 185(a), seeking to recover unpaid contributions to employee

welfare and pension funds, owed under a collective bargaining agreement ("CBA").

Groth is an auto dealer that employs members of the Machinist Union ("Union"). On behalf of these employees, Groth contributes to union welfare and pension trust funds jointly administered by Groth and the Union ("Employer Trustees" and "Union Trustees" respectively). Periodically, the parties negotiate the CBAs, setting the terms of these contributions.

In the underlying complaint, the Trustees sought delinquent payments allegedly owed under the most recent CBA which covers the period from July 2008 to August 2012 ("2008 CBA"). Groth filed an answer, and a counterclaim alleging that during the negotiation of the previous CBA, which ran from July 2006 to June 2008 ("the 2006 CBA"), the Trustees fraudulently and negligently misrepresented the rules of the trust and other material facts, and that they breached an applicable conflict policy.

Groth alleges that during the negotiations regarding the 2006 CBA, it proposed to reduce its pension contributions from $586.66 to $50.00 per employee per month and to direct the rest of the money into a 401(k) plan. Craig Andrews ("Andrews") who serves as both a Pension Fund Trustee and as the Union's chief negotiator, allegedly claimed that this proposed alteration would violate an existing Trust rule that prohibited reductions in pension contributions.[1]

According to Groth, Andrews knew that such a rule had been proposed but that its approval was contingent upon the results of arbitration between the Union Trustees and the Employer Trustees. Thus, Groth argues that Andrews knowingly misrepresented the existing terms of the Trust both orally and in a written statement that read, "Pension freeze at current amount. If trust changes rule, pension may be decreased. Company and union will meet and discuss if Trust changes rule."

Groth claims to have relied on these representations when it concluded the

---

[1] The Trustees allege that "[a]t all relevant times, Mr. Andrews reported to Don Crosatto, who was also a Trustee," and that both reported to Jim Beno.

negotiations without adjusting its future pension obligations. Nevertheless, the parties consented to a "reduction agreement" that would allegedly trigger Groth's proposed modifications if the Employer Trustees won the pending arbitration regarding permissible pension contributions. The "reduction agreement," memorialized in Article XII of the 2006 CBA, provides that the "Freeze is depending on arbitration ruling. If ruled in favor of management, the company and union will meet to discuss changes/reductions."

On March 20, 2007, the Employer Trustees succeeded at arbitration, thus blocking the Union Trustees' proposed prohibition on pension reductions. Groth claims that Andrews failed to inform them of the result and that Union member Steve Older affirmatively misrepresented the arbitration outcome. Consequently, Groth not only continued contributing $586.66/month/employee to the Trust for the remainder of the 2006 CBA, but also agreed to a provision in the 2008 CBA that preserved the arrangement.

In 2008, presumably after it ratified the 2008 CBA, Groth learned of the alleged misrepresentations and requested relief from the Trust Fund. According to Groth, the Trust Fund directed the appeal to a Trustees' committee which summarily dismissed the appeal without considering it in good faith. Nevertheless, Groth then reduced its contributions to $50/month/employee "in accordance with Groth's understanding that this reduction would be permitted, in the event such reductions were permitted by the Trust Fund." On February 9, 2009, the Trustees filed the present action, seeking to collect delinquent pension fund contributions owed under the 2008 CBA.

The counterclaim alleges (1) fraud, (2) negligent misrepresentation, and (3) conflict of interest/breach of conflict policy. Based on these allegations, Groth seeks to have its pension obligations reduced to $50 retroactive from January 27, 2007. In the alternative, it seeks the opportunity to renegotiate the terms of the pension contributions under the Trust rules that were applicable during the 2006 CBA negotiations. Additionally, Groth seeks general damages, punitive damages, and attorneys fees.

1  The Trustees now move to dismiss the counterclaim, and also move to strike the
2 prayers for punitive damages and to reopen negotiation of the CBA, as well as the
3 affirmative defenses pertaining to fraud, misrepresentation, and conflict of interest.
4  Groth opposes the motion to dismiss the first and second causes of action in the
5 counterclaim, but does not respond to the motion to dismiss the third cause of action, or
6 to the motion to strike.

## DISCUSSION

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents fo the complaint. Allarcom Pay Television, Ltd. V. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the ground upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

4

entitled to relief.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994).

B.  Motion to Dismiss

The Trustees move to dismiss the first two counts of the counterclaim on three separate bases. First, they contend that both § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, and ERISA § 515, 29 U.S.C. § 1145, bar claims of fraud by an employer against a pension trust fund where the alleged misrepresentations are not specified in a written agreement. Second, they argue that ERISA § 514, 29 U.S.C. § 1144, preempts Groth's state law fraud and misrepresentation claims. Third, they assert that the pleadings fail to satisfy the heightened standard of Federal Rule of Civil Procedure 9(b).

Because the court finds that the ERISA § 514 argument is dispositive, and that the first and second causes of action in the counterclaim are preempted, the court GRANTS the motion on that basis. Thus, the court does not address the argument that the claims are precluded by LMRA § 302(a) or ERISA § 515, the argument that the claims conflict with Congress' "comprehensive scheme of civil remedies" in contravention of ERISA § 502(a), 29 U.S.C. § 1132(a), or the assertion that the pleadings do not conform to Rule 9(b).

The Trustees assert that ERISA preempts Groth's claims because they "relate to" an employee benefit plan as articulated by ERISA § 514(a). ERISA § 514(a) expressly preempts "state laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. 1144(a); see also Abraham v. Norcal Waste Sys., Inc., 265 F.3d 811, 819 (9th Cir. 2001).

5

State law "relates to" an ERISA benefit plan if there is a "connection with" or "reference to" such a plan. Abraham, 265 F.3d at 820.  The "reference to" prong requires that the state law act immediately and exclusively upon ERISA plans or that the existence of ERISA plans is essential to the law's operation. Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1216 (9th Cir. 2000).  That prong is clearly inapplicable here.

In applying the "connection with" prong, the court looks to whether the state law encroaches on "relationships" regulated by ERISA.  Abraham, 265 F.3d at 820-21; see also Geweke Ford v. St. Joseph's Omni Preferred Care, Inc., 130 F.3d 1355, 1358 (9th Cir. 1997).  Under this "relationship" test, ERISA preempts a state law claim if the claim encroaches on the relationships ERISA regulates, "such as between plan and plan member, plan and employer, and plan and trustee."  Blue Cross of Cal. v. Anasthesia Care Assocs. Med. Group, 187 F.3d 1045, 1053 (9th Cir. 1999); see also Rutledge, 201 F.3d at 1219.

An appropriate inquiry into ERISA preemption should examine "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." Rutledge, 201 F.3d at 1216 (quoting California Div. of Labor Standards v. Dillingham, 519 U.S. 316, 325 (1997)).  Under one articulation of this test by the Ninth Circuit, a state law claim is preempted if it "encroaches on the relationships regulated by ERISA."  Geweke, 130 F.3d at 1358.

The Trustees persuasively argue that Groth's claims are invalid because they implicate ERISA's core concerns – the payment, collection, and security of pension contributions – and affect a relationship between plan and employer with respect to ensuring security of pension contributions.  Specifically, they contend that Groth, a signatory employer, seeks restitution (refund) from an employee benefit plan of contributions paid on behalf of Groth employees who are plan participants and which contributions were paid pursuant to the express terms of a written CBA.

Groth's attempt to divorce its claim from the underlying ERISA complaint is unconvincing. Any of Groth's requested remedies would substantially impact collections under the agreement, the maintenance of current funds, and the payment of benefits to employees. While Groth correctly notes that Congress did not intend to preempt state regulation that is "quite remote from the areas with which ERISA is expressly concerned," Rutledge, 201 F.3d at 1217, its own claims do affect an area and a relationship regulated by ERISA. Moreover, ERISA preempts any state claim for restitution of contributions. See Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund, 753 F.2d 744, 746 (9th Cir. 1985).

Because Groth's first and second causes of action for fraud and misrepresentation against the Trust Funds substantially affect an ERISA-governed relationship, they "relate to" to an "employment benefit plan" and are preempted under § 514(a). Accordingly, the Trustees' motion to dismiss the first two causes of action is GRANTED.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss the first and second causes of action asserted in the counterclaim is GRANTED. In addition, the motion to dismiss the third cause of action in the counterclaim and the motion to strike are GRANTED as unopposed.

A further case management conference will be held on November 18, 2010, at 2:00 p.m.

**IT IS SO ORDERED**

Dated: July 16, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge