1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE
AUTOMOTIVE INDUSTRIES
WELFARE FUND, et al.,

        Plaintiffs,

    v.

GROTH OLDSMOBILE/CHEVROLET,
INC.,

        Defendant.
_____/

No. C 09-0465 PJH

**ORDER RE MOTIONS FOR
SUMMARY JUDGMENT**

On March 2, 2011, the court heard argument in plaintiffs' and third-party defendants'

motions for summary judgment.  Plaintiffs Board of Trustees of the Automotive Industries

Welfare Fund and Automotive Industries Pension Fund, and Jim Beno ("Trustees")

appeared by their counsel Anne M. Bevington; defendant and third-party plaintiff Groth

Oldsmobile/Chevrolet, Inc. ("Groth") appeared by its counsel Joshua Cliffe; and third-party

defendants East Bay Automotive Counsel, Machinists Automotive Trades District Lodge

No. 190 of Northern California, and East Bay Automotive Lodge No. 1546 (collectively, "the

Union") appeared by their counsel Ezekiel Carder.

Having read the parties' papers and carefully considered their arguments, and the

relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiffs'

motion in part and DENIES it in part, and GRANTS the Union's motion.

United States District Court
For the Northern District of California

**BACKGROUND**

This is a case brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C §§ 1002, et seq.; § 301(a) of the National Labor Relations Act of 1947, 29 U.S.C. § 185(a); and the Declaratory Judgment Act, 28 U.S.C .§ 2201, et seq.

The plaintiff Trustees are named fiduciaries and plan administrators of employee benefit plans (union welfare and pension trust funds) and bring this action on behalf of fiduciaries, participants and beneficiaries of those trust funds.

Groth is an automobile dealership that is located in Livermore, California, and owned by Robin Groth-Hill.  Groth contributes to union welfare and pension trust funds jointly administered by trustees representing employers, such as Groth, and unions ("Employer Trustees" and "Union Trustees" respectively).  The Automotive Industries Pension Trust Fund ("the Pension Trust Fund") is a multi-employer pension plan that is governed by a Board of Trustees consisting of five Union Trustees and five Employer Trustees.

Over the years, Groth has entered into a series of collective bargaining agreements ("CBAs") with Machinists Automotive Trade District Lodge No. 190 of Northern California ("Machinists Union"), which represents some of Groth's employees.  Each CBA has included provisions for pension contributions.  During a portion of the time relevant to this case, Craig Andrews ("Andrews") served as a representative of the Machinists Union and also as a Trustee for the Pension Trust Fund.  Andrews reported to Don Crosatto ("Crosatto"), who was an Area Director for the Machinists Union, and a Trustee; and Crosatto and Andrews both reported to plaintiff Jim Beno, also a Trustee.

Groth claims that starting in 2003, the Pension Trust Fund began experiencing financial difficulties, with the result that it no longer had enough money to pay out the promised benefits.  Under the 2001-2005 contract, Groth was obligated to contribute $586.66 per employee, on behalf of most of its employees.  Groth contends that beginning in 2003, retirement benefits were cut back to nearly nothing.

During the negotiations regarding the CBA effective July 1, 2006 to June 30, 2008

1   ("2006 CBA"), Robin Groth-Hill proposed to reduce Groth's pension contributions from
2   $586.66 to $50.00 per employee per month and to direct the rest of the money into a
3   401(k) plan, which she believed would provide superior retirement benefits to the
4   bargaining unit employees.

5         Robin Groth-Hill testified that she discussed this proposal with Andrews, the Union's
6   chief negotiator.  She claimed that Andrews repeatedly stated throughout the period
7   between May and August 2006 that the contribution amount could not be reduced because
8   of a "freeze," and that "because there was this rule, there was no reduction allowed."  She
9   testified further that Andrews assured her that "if the rule were to change, then you can
10  reduce your pension."  Nevertheless, she conceded that she had nothing in writing
11  confirming this agreement, which she asserted was made verbally.  In his deposition,
12  Andrews testified that he could not recall any specific conversation about reducing pension
13  contributions.

14        Andrews sent a proposal to Groth on November 13, 2006, which stated, "Pension
15  freeze at current amount.  If Trust changes rule, pension may be decreased.  Company
16  and Union will meet and discuss if Trust changes rule."  In his deposition, however,
17  Andrews stated that there was no "rule" in 2006 regarding an employer's ability to reduce
18  its pension contribution.  For this reason, Groth asserts that Andrews misrepresented the
19  existing situation with regard to the possibility of reductions.

20        In other testimony, however, when asked about the provision in the trust agreement
21  that "[e]ach Employer shall make such Employer contributions" to the Trust Fund "as are
22  required by the Pension Agreement applicable to each Employer[,] provided however that
23  such contributions shall be on a monthly basis and no less than $25.00 per month,"
24  Andrews explained that he interpreted this provision as meaning that the minimum
25  contribution was $25.00 per month.

26        Andrews testified further that it was his understanding that the employers could
27  reduce their contribution if they requested a reduction and if the employees agreed to the
28  reduction.  He added that the "most likely" reason that he told Robin Groth-Hill in the

United States District Court

For the Northern District of California

1  November 13, 2006 communication that Groth and the Union would "meet and discuss if

2  Trust changes rules" was that "the employees did not want to have any reductions in their

3  pension," and he was therefore "under the impression that we could not reduce pension."

4       While the negotiations for the 2006 CBA were ongoing, a dispute arose among the

5  Trustees regarding whether the Trust allowed employers to reduce contributions to the

6  Pension Trust Fund.  After they deadlocked on the Union Trustees' motion to disallow any

7  reduction in employer contributions in any contract received after August 8, 2008, the

8  Trustees decided to submit the matter to arbitration.

9       Thus, Groth asserts, Andrews knew that a rule precluding reductions in contributions

10  had been proposed but that its approval was contingent upon the results of the pending

11  arbitration between the Union Trustees and the Employer Trustees.  Groth contends that

12  this is reflected in the minutes of the August 8, 2006 meeting at which the Trustees had

13  deadlocked on the Union Trustees' proposed amendment.  The minutes indicate that

14  Andrews made a motion to proceed to arbitration.  Groth asserts this shows that two

15  months prior to Andrews' representation that the Trust Fund could not reduce pension

16  contributions, he personally endeavored to prevent pension contribution reductions.

17       Groth has also provided declarations from two employees (Barry Chambers and Dan

18  Bermingham), stating that they attended a meeting held at the dealership in 2006, where

19  Andrews told them that if they could "drag their feet" for a few months, Groth would not be

20  able to reduce pension contributions.

21       The parties finalized the 2006 CBA on January 18, 2007.  Although Groth claims to

22  have relied on Andrews' representations when it concluded the negotiations without

23  adjusting its future pension obligations, Groth also agreed to what it calls the "Reduction

24  Agreement," which it asserts was intended to trigger its proposed modifications if the

25  Employer Trustees prevailed at the pending arbitration.  This agreement, which was

26  memorialized in Article XII of the 2006 CBA, provided that the "Freeze is depending on

27  arbitration ruling.  If ruled in favor of management, the company and union will meet to

28  discuss changes/reductions."

United States District Court

For the Northern District of California

1    The arbitration was held on February 26, 2007.  On March 30, 2007, the Arbitrator

2  issued his decision, stating that the motion of the Union Trustees was "beyond the scope of

3  the arbitrator's authority as provided for in the Trust Agreement," and that the matter

4  therefore could not be arbitrated under the terms of the Trust.  The result of this ruling was

5  that the Union Trustees' proposed prohibition on pension reductions was not adopted.

6    Groth asserts that Andrews failed to inform them of the result of the arbitration, and

7  that Union member Steve Older affirmatively misrepresented the outcome.  Groth claims

8  that based on Andrews' alleged misrepresentations, it continued making the monthly

9  $586.66 per employee contribution to the Pension Fund for the remainder of the term of the

10  2006 CBA.

11    On June 20, 2007, the Trustees held a meeting at which they established the

12  "Pension Contribution Rate Policy," which they set forth in a communication to contributing

13  employers, dated August 2007.  The new Policy provided that "[e]ffective for agreements

14  which are ratified on or after June 20, 2007 . . . each monthly pension rate contributed by

15  an employer may not be reduced to a rate that is more than 25% less than what that rate

16  was on June 19, 2007."

17    On May 7, 2008, the Union and Groth entered into a CBA covering the period April

18  25, 2008 through June 12, 2012 ("2008 CBA").  Groth claims that based on the alleged

19  misrepresentations by Andrews during the negotiations for the 2006 CBA, it not only

20  continued contributing $586.66/month per employee to the Pension Trust Fund for the

21  remainder of the 2006 CBA, but also agreed to a provision in the 2008 CBA that preserved

22  the arrangement.

23    Groth contends that after it agreed to the new CBA, Robin Groth-Hill learned that

24  Andrews had misled her about the "rules" of the Trust Fund.  She wrote an "appeal" letter

25  to the Trustees, dated June 2008, requesting relief in the form of reduced pension

26  contributions, as she had proposed during the negotiations for the 2006 CBA.  Groth claims

27  that the Trustees failed to give the request serious, good-faith consideration, and that they

28  summarily dismissed the matter without looking into it.

United States District Court

For the Northern District of California

1   In October 2008, Groth stopped contributing at the contract rates, and began paying

2   contributions of only $50.00 per employee.  The present action is based on Groth's failure

3   to make contributions owing under the 2008 CBA.  The Trustees allege Groth has

4   continued to underpay its pension contributions since October 2008.  The Trustees filed the

5   original complaint on February 2, 2009, seeking recovery of delinquent contributions,

6   pursuant to ERISA § 502, 29 U.S.C. § 1132; and also seeking a declaratory judgment that

7   Groth is obligated to make those payments.

8   On April 20, 2009, Groth filed an answer to the complaint, and on April 30, 2009,

9   Groth filed a third-party complaint against the Union, alleging breach of contract, fraud,

10  negligent misrepresentation, and indemnity.  The third-party defendants filed an answer on

11  June 17, 2009.

12  On April 1, 2010, Groth filed an amended answer asserting 19 affirmative defenses,

13  and a counterclaim alleging fraud, negligent misrepresentation, and conflict of

14  interest/breach of conflict policy.  Based on the allegations in the counterclaim, Groth

15  sought to have its pension obligations reduced to $50.00 retroactive from January 27,

16  2007.  In the alternative, it sought to "renegotiate" the terms of the pension contributions

17  under the Trust "rules" that were applicable during the 2006 CBA negotiations.

18  The Trustees moved to dismiss the counterclaim; and to strike the reference to fraud

19  in the answer, the eighteenth affirmative defense (based on "fraudulent misrepresentations

20  made by [the Trustees] through the Trust Fund's Trustee Craig Andrews"), and the

21  nineteenth affirmative defense (based on "conflict of interest of . . . Trustee, Craig

22  Andrews").  Groth opposed the motion as to only the claims for fraud and negligent

23  misrepresentation.  On July 16, 2010, the court granted the motion as to the fraud and

24  negligent misrepresentation claims, finding that they were preempted by ERISA § 514, 29

25  U.S.C. § 1144; and also granted the motion as to the claim of conflict of interest/breach of

26  conflict policy, and the motion to strike, as unopposed.

27  The plaintiff Trustees now seek summary judgment, as do the third-party

28  defendants.

6

**DISCUSSION**

A.   Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, __ F.3d __, 2011 WL 982475 at *4 (9th Cir., Mar. 22, 2011).

B.   Plaintiffs' Motion

The Trustees argue that Groth owes delinquent pension contributions under its 2008 CBA with the Machinists Union, and that the Trustees are entitled to recover those unpaid contributions under ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).  The Trustees seek an

United States District Court

For the Northern District of California

1   award of unpaid contributions; interest on unpaid contributions; and costs and attorney's

2   fees in an amount to be determined by the court.  The Trustees also reserve the right to

3   conduct an audit to determine whether all reports and contributions have been made for the

4   period October 2008 to the present, or for any other unaudited period; and seek an order

5   requiring Groth to contribute at contract rates, and prohibiting Groth from disposing of any

6   assets without fair consideration.

7          The Trustees support their motion with a declaration by Michael Schumacher, the

8   Fund Manager of Associated Third Party Administrators, which administers the Pension

9   Trust Fund.  Mr. Schumacher is the custodian of the books and records of the Trust Fund.

10  In his declaration, Mr. Schumacher provides a calculation of the amount of unpaid

11  contributions that Groth owed as of November 20, 2010, and attaches relevant supporting

12  documentation, including the 2008 CBA; the incorporated Pension Agreement; portions of

13  the Pension Trust Fund Agreement; the 1990 Trustees Resolution regarding liquidated

14  damages on unpaid contributions; a summary of the contribution shortages owned by Groth

15  for the period October 2008 to November 2010, plus underlying documents supporting that

16  summary; and the calculation of interest and liquidated damages on Groth's unpaid

17  contributions, through February 2, 2011.

18         In opposition, Groth argues that the motion should be denied because there are

19  genuine disputes of material fact as to whether Groth's agreement to contribute to the

20  Pension Trust Fund was fraudulently induced by the Trustees or the Trust Fund; and as to

21  whether the doctrine of unclean hands or the doctrine of estoppel is a bar to the Trustees'

22  claims.  Groth also argues that the Trustees are not entitled to the injunctive relief they

23  seek.

24         First, with regard to the affirmative defenses, Groth contends that it is not liable for

25  the unpaid contributions because Andrews, a Trustee of the Pension Trust Fund and a

26  representative of the Union, fraudulently induced Groth's agreement to pay contributions at

27  an unreduced rate.

28         Groth concedes, as held in Southwest Administrators, Inc. v. Rozay's Transfer, 791

United States District Court
For the Northern District of California

1  F.2d 769 (9th Cir. 1986), and <u>Southern California Retail Clerks Union and Food Employers</u>

2  <u>Joint Pension Tr. Fund v. Bjorklund</u>, 728 F.2d 1262 (9th Cir. 1984), that ERISA § 515 limits

3  the extent to which an employer can raise the misconduct of a third party as a defense to

4  the collection action,[1] and, more importantly, that a defense of fraudulent inducement is not

5  available in such an action.

6      Groth argues, however, that § 515 does not preclude all defenses to collection

7  actions.  Groth relies on the United States Supreme Court's decision in <u>Kaiser Steel Corp.</u>

8  <u>v. Mullins</u>, 455 U.S. 72 (1982), where the Court noted that Congress did not say that

9  employers should be prevented from raising all defenses, but rather "spoke in terms of

10 'unrelated' and 'extraneous' defenses," and did not even implicitly repeal any other statute

11 that might be raised as a defense to a provision in a CBA.  <u>See id.</u> at 88; <u>see also</u> <u>Board of</u>

12 <u>Trustees of Watsonville Frozen Food Welfare Tr. Fund v. California Co-op. Creamery</u>, 877

13 F.2d 1415, 1424-25 (9th Cir. 1989) (noting that under <u>Kaiser Steel</u>, § 515 does not preclude

14 all defenses to contribution collection actions, but only "unrelated" and "extraneous"

15 defenses).

16     Here, Groth argues, it has not asserted any "unrelated" or "extraneous" defenses –

17 but rather, has asserted defenses based specifically on the misconduct of Andrews, a

18 Trustee of the Pension Trust Fund.  Groth contends that in 2006, Andrews affirmatively

19 misrepresented the Trust Fund's "rules," when he stated that a Trust Fund "rule" had to

20 change in order for Groth to reduce the size of its pension contributions.

21     Groth argues further that even if the court finds that its contract-based defenses are

_____

23 [1] Section 515 was added to ERISA in 1980 by § 306(a) of the Multiemployer Pension
24 Plan Amendment Act ("MPPAA"), Pub. L. 96-364, 94 Stat. 1295, to allow trust funds to recover
delinquent contributions from employers as expeditiously as possible.  ERISA § 515 provides
as follows:

25      Every employer who is obligated to make contributions to a multiemployer plan
26      under the terms of the plan or under the terms of a collectively bargained
        agreement shall, to the extent not inconsistent with law, make such contributions
27      in accordance with the terms and conditions of such plan or such agreement.

28 29 U.S.C. § 1145.  In common with other ERISA provisions, § 515 is enforced via ERISA
§ 502(a)(3).

9

United States District Court

For the Northern District of California

1   precluded by ERISA § 515, its equitable defenses of "unclean hands" and "estoppel" will

2   apply, and asserts that the Trustees' motion should be denied because disputed material

3   issues of fact remain as to those two defenses.

4        In its second main argument, Groth contends that the Trustees are not entitled to

5   injunctive relief in the form of an order requiring Groth to make contributions at an

6   unreduced rate, and prohibiting Groth from transferring its assets without adequate

7   consideration.  Groth argues that to obtain such relief, the Trustees must show "a real

8   threat of substantial or irreparable injury," which Groth claims they have not done.

9        Viewing the evidence in the light most favorable to Groth, the court finds that since

10  October 2008, Groth has failed to make required contributions to the Pension Trust Fund,

11  and that Groth has not provided evidence sufficient to raise a genuine issue of fact as to

12  any alleged wrongdoing by the Trust Fund.  Accordingly, the motion is GRANTED as to the

13  delinquent contributions claim.

14       Further, the motion is GRANTED as to the affirmative defenses of fraudulent

15  inducement, unclean hands, and estoppel.  Groth has not provided evidence as to those

16  three defenses sufficient to create a triable issue regarding the Trustees' claim for unpaid

17  pension contributions under the 2008 CBA.

18       Groth cannot assert a defense of fraudulent inducement.  As an initial matter, the

19  court previously granted the Trustees' motion to strike the eighteenth affirmative defense

20  (fraudulent misrepresentations made by the Trustees through Andrews), as well as the

21  allegations in fraud in the answer.  Groth claims, however, that notwithstanding the court's

22  prior ruling, its fraud defense is preserved in the twelfth and fifteenth affirmative defenses.

23       The twelfth affirmative defense alleges "fraudulent misrepresentations made by the

24  Machinists Union."  The fifteenth affirmative defense alleges that "the Trust knew" that

25  Groth and the Union "had negotiated for a conditional reduction of pension contributions"

26  and that this "negotiated condition" was "embodied in" the CBA, and was "satisfied" in

27  2007," which entitled Groth to a reduction of pension contributions.  Neither of these

28  defenses "preserves" a defense of fraudulent misrepresentation by the Trustees, nor, for

10

United States District Court

For the Northern District of California

1    reasons stated below, is either defense sufficient to bar the Trustees' action in this case.

2       Fraudulent inducement cannot be asserted as a defense in an action for recovery of

3    delinquent contributions.  Generally, courts that have analyzed ERISA § 515 and its

4    legislative history have concluded that employers are responsible for ERISA plan

5    contributions regardless of defenses challenging the validity of the underlying CBA.  See,

6    e.g., MacKillop v. Lowe's Market, Inc., 58 F.3d 1441, 1443 (9th Cir. 1995).  Sponsors of the

7    legislation intended the provision to "simplify contribution collection actions" by curtailing

8    "'lengthy, costly, and complex litigation concerning claims and defenses unrelated to the

9    employer's promise and the Plan's entitlement to the employer's contributions. . . . Sound

10   national pension policy demands that employers . . . not be permitted to repudiate their

11   pension promises.'"  California Co-op. Creamery, 877 F.2d at 1424 (quoting 126 Cong.

12   Rec. S. 11673 (Aug. 26, 1980); 126 Cong. Rec. H. 7899 (Aug. 26, 1980)).

13      Given Congress' stated intent, the Ninth Circuit has interpreted § 515 to limit the

14   affirmative defenses available to employers defending against delinquent contribution

15   claims.  In Bjorklund, union trust funds brought suit under the LMRA and ERISA to collect

16   unpaid contributions, and the employer alleged that he had been fraudulently induced by a

17   union representative into signing the CBAs.  The court denied the defense, noting that

18   under applicable law, "the range of defenses to such a suit is severely limited."  Id., 788

19   F.2d at 1265-66 (citations omitted).  In particular, the court noted that when Congress

20   enacted the MPPAA in 1980, it included the provision that "[e]very employer who is

21   obligated to make contributions . . . shall . . . make such contributions."  Id. at 1265 (quoting

22   29 U.S.C. § 1145).

23      Bjorklund acknowledged that under Kaiser Steel, an employer can successfully

24   defend a suit for delinquent contributions by showing that the promise to make

25   contributions was itself illegal.  Bjorklund, 728 F.2d at 1265-66 (citing Kaiser Steel, 455

26   U.S. at 88).  However, Bjorklund concluded, while "a defense is properly allowable when it

27   relates to a promise to make contributions that is illegal," a defense that the promise was

28   fraudulently induced is not a legitimate defense to a suit for delinquent contributions.  Id. at

United States District Court

For the Northern District of California

1    1265-66; see also California Co-op. Creamery, 877 F.2d at 1424-25 .

2         In Rozay's Transfer, the Ninth Circuit reaffirmed that where the alleged

3    misrepresentation by the Union goes to the employer's inducement to enter into the

4    agreement, rather than to his understanding of the basic nature of the transaction, the

5    claim that a promise to make contributions was fraudulently induced could not be

6    considered "a legitimate defense to the trust fund's action to recover delinquent

7    contributions." Id., 771 F.2d at 773 (citing Bjorklund, 728 F.2d at 1266).

8         In a subsequent case, Rozay's Transfer v. Local Freight Drivers, Local 208, 850

9    F.2d 1321 (9th Cir. 1988) ("Rozay's Transfer II"), the same employer brought an action

10   against the union, alleging that the union had fraudulently induced it to enter into the CBA,

11   based on the same allegations of misrepresentation as in the prior case.  The court found

12   that the employer would not have entered into the CBA if he had known that it obligated

13   him to pay retroactive contributions.  Id. at 1327.  The court also held that its prior ruling

14   that the employer was bound by the CBA and was obligated to pay the contributions,

15   regardless of whether the union had misrepresented the contents of the CBA, had no

16   bearing on the question whether the union itself could be held liable for fraudulently

17   inducing the employer to enter into the CBA.  Id. at 1331.

18        Implicit in the twelfth affirmative defense is the allegation that the Union fraudulently

19   induced Groth to enter into the 2006 CBA.  As stated above, the defense of fraudulent

20   inducement is barred by ERISA § 515.  Groth's reliance on Kaiser Steel Corp. is misplaced,

21   because the issue in that case was that "illegal promises" will not be enforced in cases

22   controlled by federal law; and because the case did not involve any actions of the trust

23   fund, but rather a provision in the CBA itself, which allegedly violated federal law.  Here, by

24   contrast, Groth is not claiming that the contribution obligation in the CBA is illegal under

25   federal law or otherwise, but rather is asserting that it was fraudulently induced – a defense

26   that is extraneous to the terms of the contract.

27        As for the fifteenth affirmative defense, it appears to be predicated on an untrue

28   premise.  The undisputed evidence shows that during the negotiation for the 2006 CBA,

United States District Court

For the Northern District of California

Groth and the Union agreed to the insertion of a provision in the CBA stating that if the arbitrator ruled in favor of management, "the company and union will meet to discuss changes/reductions."  There is no evidence of any agreement regarding a "conditional reduction of pension contributions" – simply an agreement that depending on the outcome of the arbitration, the parties would "meet to discuss" a possible reduction.

The other two defenses that Groth relies on – unclean hands and estoppel – are also inapplicable.  Both defenses seek to preclude the Trust Fund's recovery of unpaid contributions based on the same alleged "fraud" by Andrews during the negotiations for the 2006 CBA.  In addition, each of these defenses is inapplicable because Groth cannot meet the necessary elements.

The doctrine of unclean hands applies when a party seeks affirmative relief, but is itself guilty of conduct involving fraud, deceit, unconscionability, or bad faith; and the misconduct directly relates to the matter at issue, injures the other party, and affects the balance of equities between the litigants.  Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15 (1945).  This defense serves as a bar to recovery where the plaintiff's conduct is inequitable, and that conduct relates to the subject matter of its claims.  Brother Records, Inc. v. Jardine, 318 F.3d 900, 909 (9th Cir. 2003).

Groth contends that all the elements are met, as the Trustees are seeking affirmative relief (recovery of unpaid contributions) on behalf of the Pension Trust Fund; and are guilty of conduct involving fraud, deceit, unconscionability, and bad faith, as a Trustee (Andrews) misled Groth as to its "contribution rights" in order to preclude Groth from reducing its rate of pension contributions.  In addition, Groth asserts that the matter in issue is the pension contributions, which were affected by the alleged misrepresentations; and that the conduct of the Trustees and the Trust Fund has injured Groth and affected the balance of equities between the parties.  Groth contends that because there is a significant issue of material fact as to whether the Trustees and Trust Fund have acted with "unclean hands," and are therefore precluded from seeking the delinquent contributions, the Trustees' motion for summary judgment should be denied.

United States District Court

For the Northern District of California

1   The court finds that Groth has failed to raise a genuine issue as to whether

2   Andrews' representation was an action of the Trust Fund.  While the evidence shows that

3   Andrews was one of ten Trustees of the Pension Trust Fund at the time of the 2006

4   negotiations, there is no evidence that he was acting in his capacity as Trustee when he

5   negotiated the contract or when he made the allegedly false representations about the

6   Trust Fund "rule."

7   In addition, there is no evidence that the Board of Trustees delegated authority to

8   Andrews to negotiate a CBA with Groth, or to make representations on its behalf when he

9   did so, or that the Trustees had such authority to delegate – or that it did anything to give

10   Groth the reasonable impression that Andrews was acting on the Board's behalf.  To the

11   contrary, the evidence provided by Groth shows that Andrews acted in his capacity as a

12   bargaining representative for the Union when he negotiated the 2006 CBA with Groth, and

13   that Robin Groth-Hill believed Andrews was acting on behalf of the Union during the

14   negotiations.

15   Groth claims that the Trust Fund "ratified" Andrews' misconduct by summarily

16   dismissing Groth's "appeal" without any investigation.  The parties agree that the "appeal"

17   took the form of a letter dated June 2008 that Robin Groth-Hill sent to the Board of

18   Trustees of the Trust Fund, in which she complained that Union representatives had failed

19   to tell her that there had been an opportunity to reduce her pension contribution when the

20   employers' side prevailed in the arbitration.  She also requested that the Trust Fund modify

21   Groth's contribution obligation to $50.00 per employee per month, retroactive to July 2006;

22   reimburse Groth for the amounts in excess of that sum that it had paid for that period; pay

23   interest on the entire sum; and pay Groth's attorney's fees.

24   Robin Groth-Hill told the Board that "My exact language in my contract states that if

25   the arbitration is successful then I get to go to the $50 level."  However, this statement is at

26   odds with the actual language in the 2006 CBA, which provided that "Pension freeze is

27   depending on arbitration ruling, if ruled in favor of management, the company and union will

28   meet to discuss changes/reductions."

United States District Court

For the Northern District of California

1    Moreover, there is no evidence that the Trustees "summarily dismissed" the "appeal"

2   without giving it due consideration, as Groth claims.  The Trustees have provided the text of

3   the minutes of the August 5, 2008, Trust Funds Delinquency Committee Meeting, stating

4   that

5        [t]he Delinquency Committee reviewed the request by Groth Oldsmobile/
         Chevrolet, Inc. to be able to reduce contribution rates due to their claim that
6        they were not notified of the new policy.  After review and discussion, the
         Committee denied their request based on the Collection Policy that is in effect
7        and the requirements of the Pension Protection Act of 2006.

8        Under N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc., 453 U.S. 322 (1981),

9   trustees can neither require employer contributions not required by the original collectively

10  bargained contract, nor compromise the claim of the union or the employer with regard to

11  the latter's contributions.  Id. at 335-36.  Trustees are required to enforce the terms of the

12  CBA regarding employer contributions "for the sole benefit of the beneficiaries of the fund."

13  United States v. Carter, 353 U.S. 210, 220 (1957).  Thus, as a matter of law, the Trustees

14  were precluded from granting the relief requested in Groth-Hill's "appeal," as they had no

15  power to modify Groth's CBA or to reduce its pension contributions.

16       As for Robin Groth-Hill's request for a refund of contributions, and for interest and

17  attorney's fees, ERISA § 403(c) provides that "the assets of a plan shall never inure to the

18  benefit of any employer and shall be held for the exclusive purposes of providing benefits to

19  participants in the plan and their beneficiaries and defraying reasonable expenses of

20  administering the plan."  29 U.S.C. § 1103(c)(1).  While trustees are permitted under

21  ERISA § 403(c)(2)(A) to refund contributions that an employer makes because of a mistake

22  of fact or law, see 29 U.S.C. § 1103(c)(2)(A), the circumstances under which an employer

23  can obtain a refund are limited to those described in that section of ERISA.  Award Service,

24  Inc. v. Northern Cal. Retail Clerks, 763 F.2d 1066, 1070-71 (9th Cir. 1985).

25       In this case, there is no evidence that Groth was requesting a refund because of a

26  mistake.  Nor can the Trustees' denial of Robin Groth-Hill's "appeal" be considered a

27  ratification of any activity by Andrews.  Rather, it was a proper exercise of their fiduciary

28  duty under ERISA, and therefore cannot create a genuine issue of material fact as to

15

United States District Court

For the Northern District of California

1   Groth's affirmative defense of unclean hands.

2      The estoppel defense is also inapplicable.  Groth has failed to provide evidence

3   sufficient to raise a genuine issue as to whether the Trust Fund itself engaged in the

4   conduct that Groth complains of, either because of Andrews' status as a trustee, or

5   because of "ratification."

6      The elements of this defense are that the party to be estopped must know the facts,

7   and must intend that his conduct be acted on so that the party asserting the estoppel has a

8   right to believe it is so intended; and the party asserting the estoppel must be ignorant of

9   the true facts, and must rely on the other party's conduct to his injury.  Operating Eng'rs'

10  Pension Tr. Fund v. Clark's Welding & Machine, 688 F.Supp. 2d 902, 914 (N.D. Cal. 2010)

11  (trust fund assessed penalty against employer for withdrawal from pension plan, and

12  employer challenged it on the basis that trust fund had previously represented that an

13  agreement settling a claim for delinquent contributions would cover every obligation the

14  employer had against the trust fund).

15     Groth contends that each of these elements is met.  Groth asserts that at the time of

16  the alleged misrepresentations, the Trust Fund knew it had no rules prohibiting contribution

17  reductions.  Groth claims that Andrews intended that his misrepresentations be acted on,

18  as his position remained the same throughout the negotiations, and even instructed Union

19  members to "drag their feet" until the Trust Fund's contribution rules had changed.  Groth

20  claims that Robin Groth-Hill was not aware that the Trust Fund had no rule prohibiting

21  contribution reductions, and that she relied on Andrews' representations.  Thus, Groth

22  asserts, there is a genuine issue of material fact as to whether the Trust Fund is estopped

23  from collecting the delinquent contributions.

24     However, Groth has not provided evidence that the Trust Fund led Groth to believe

25  that something was true and then later tried to deny it.  Groth claims that Andrews made a

26  false representation that the Trust Fund had a "rule" prohibiting reductions.  Proper

27  application of estoppel would be to prevent the party who made the representation

28  (Andrews) from later claiming that there was no such rule.  However, Groth does not assert

United States District Court
For the Northern District of California

1  that Andrews later denied having said that, but rather that Andrews said it originally

2  knowing it was false.  The Trustees are correct that this is just another variant of a fraud

3  defense, and as such, is not permissible as a defense to a § 515 collection action.

4         The declarations of Groth employees Barry Chambers and Don Bermingham, in

5  which they claim that at a meeting of Groth's employees, Andrews told them that if they

6  could delay for a few months, Groth would not be able to reduce pension contributions, are

7  irrelevant to this issue, as the statements do not pertain to any representation by the Trust

8  Fund directed at Groth, the employer.

9         Moreover, Groth has established neither that Andrews' representation was an action

10  of the Trust Fund, nor that the Trustees "ratified" Andrews' misrepresentation by

11  "summarily dismissing" Robin Groth-Hill's "appeal."  Groth provides no evidence regarding

12  the Trustees' consideration of the "appeal," other than the minutes of the August 5, 2008

13  committee meeting, at which they denied Robin Groth-Hill's request for a reduction in

14  contribution amounts.  The Trustees are correct in arguing that they had no authority to

15  reduce the stated pension contributions amounts as set forth in the CBA.  Groth has

16  provided no evidence of "unclean hands."

17         The motion is DENIED as to the prayer for injunctive relief, as injunctive relief is

18  neither a claim nor a defense, but rather is a remedy.  The court finds, however, that the

19  Trustees are entitled to injunctive relief to effectuate their collection of the delinquent

20  contributions, and that the revised proposed order should include such a provision.

21         Finally, the Trustees have moved in the alternative for a finding of undisputed facts.

22  That alternative motion is DENIED, as unauthorized under Rule 56.  A party may "move for

23  summary judgment" on a "claim or defense" or on "part of [a] claim or defense."  Fed. R.

24  Civ. P. 56(a).  If, in ruling on the motion, the court "does not grant all the relief requested," it

25  "may enter an order stating any material fact . . . that is not genuinely in dispute and

26  treating the fact as established in the case."  Fed. R. Civ. 56(g).  While Rule 56 allows the

27  court in its discretion to find that particular facts are not in dispute, it does not authorize

28  parties to move for "partial summary judgment" as to a particular fact.

United States District Court
For the Northern District of California

C.     The Union's Motion

1       The Union seeks summary judgment as to all causes of action alleged in the third-party complaint.  In the first cause of action, Groth alleges that the Union breached the 2006 CBA by failing to notify Groth that the Employer Trustees prevailed at the arbitration, by misrepresenting the outcome of the arbitration, and by failing to meet and discuss and implement the Reduction Agreement.  The Union asserts that this claim is preempted by LMRA § 301, and that Groth failed to exhaust contractual remedies to cure the breach. Groth does not oppose this part of the motion.

       In the second cause of action, Groth alleges that the Union committed fraud by misrepresenting to Groth the outcome of the arbitration.  Groth claims that it relied on the Union's representations because it believed the Union was in a superior position to know the outcome of the arbitration.  Groth adds, in its opposition to the Union's motion, that the Union also committed fraud when Andrews misinformed Groth regarding the pension contribution "rules."

       In the third cause of action for negligent misrepresentation, Groth alleges that as a party to the CBA, the Union owed Groth a duty to represent all material facts fairly and honestly, and that it breached this duty by misrepresenting the "rules" of the Trust and the outcome of the arbitration.

       In the fourth cause of action, Groth alleges that if it is held liable for damages (unpaid pension contributions) as alleged in the first amended complaint, it will be entitled to complete indemnification by the Union.

       The Union argues that the second cause of action for fraud and the third cause of action for negligent misrepresentation fail because both claims are preempted.  State law claims that are substantially dependent on an interpretation of a CBA are preempted under LMRA § 301.  See Cramer v. Consolidated Freightways, Inc., 209 F.3d 1122, 1129 (9th Cir. 2000).  The Union contends that because the alleged fraud arises out of enforcement and obligations existing under the CBA, and because this claim arises out of the same acts and conduct that form the basis of the § 301 claim (the first cause of action), the fraud claim is

United States District Court

For the Northern District of California

1    preempted.

2        The Union also asserts that both the fraud and the negligent misrepresentation

3    claims are preempted by § 301 because the court would have to interpret the CBA in order

4    to determine the duty that the Union allegedly owed to Groth.  Groth alleges in the third-

5    party complaint that the Union owed a duty to represent material facts fairly and honestly

6    because of the bargaining relationship.  The Union argues that this duty is not found in

7    federal labor law, and appears to be derived solely from the relationship between the

8    parties, as expressed in the CBA.

9        The Union argues further that Groth cannot prove the elements of fraud or the

10   elements of negligent misrepresentation.  The elements of a claim of fraud are

11   misrepresentation, knowledge of falsity, intent to defraud (i.e., to induce reliance), justifiable

12   reliance, and resulting damage.  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).  The

13   same elements comprise a cause of action for negligent misrepresentation, except that

14   there is no requirement of intent to induce reliance.  Caldo v. Owens-Illinois, Inc., 125 Cal.

15   App. 4th 513, 519 (2004). In both causes of action, the plaintiff must show that it actually

16   relied on the misrepresentation.  Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239

17   & n.4 (1995); see also Conrad v. Bank of America, 45 Cal. App. 4th 133, 157 (1996).  Here,

18   the Union asserts that Groth cannot show reasonable reliance.

19       In addition, where a fraud claim is based on alleged nondisclosure of facts, the

20   plaintiff must establish that the defendant was under a legal duty to disclose those facts.

21   See Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1408 (9th Cir. 1992);

22   OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835,

23   845 (2007).  The Union contends that in this case, Groth cannot show any such legal duty.

24       First, with regard to the alleged misrepresentations concerning the outcome of the

25   arbitration, the Union asserts that there is no basis for Groth's allegation in the third-party

26   complaint that the Union or any Union representative was in a better position to know the

27   outcome of the arbitration than Groth was, particularly given the involvement of Groth's

28   counsel Robert Hulteng, who also served as counsel for the Employer Trustees of the

**United States District Court**

For the Northern District of California

1    Pension Trust Fund in the arbitration.  The Union argues that because Groth had direct

2    knowledge of the facts from its own counsel, it was not reasonable for Groth to rely on

3    statements made by representatives of the Union.

4         Second, with regard to the alleged misrepresentations concerning the "rules" of the

5    Trust, the Union asserts that Groth cannot prove any type of reliance, because it entered

6    into the 2006 CBA with the language regarding the pending arbitration in place, and agreed

7    in the CBA to be bound by the pension contribution provisions.  The Union argues that for

8    Groth to say that it would not have entered into the CBA unless it was convinced that the

9    Employer Trustees would prevail at the arbitration and the Union would agree to a

10   reduction of pension contributions is an unrealistic and unsupported reading of the CBA

11   provision.

12        The Union anticipates that Groth will rely on Rozay's Transfer II, but argues that the

13   facts in the present case are distinguishable.  In Rozay's Transfer II, the employer relied on

14   the union's representation that it would persuade the trust fund to waive certain

15   contributions for past work, and learned only after signing the CBA that the past

16   contributions would be required (and indeed, that the trust fund had already rendered an

17   adverse decision on his request to forgive the unpaid contributions).  Id., 850 F.2d at 1327-

18   28.  Here, the Union asserts, Groth entered into the 2006 CBA well aware of the

19   uncertainty surrounding pension contributions (as evidenced by the reference in the 2006

20   CBA to the pending arbitration of the dispute between the Trustees), and without any

21   certainty as to what would occur if the Employer Trustees prevailed in the arbitration.

22        The only relevant agreement memorialized in the 2006 CBA is the obligation to

23   "meet to discuss changes/reductions."  The Union asserts that the CBA imposed no

24   obligation on the parties to reach agreement on the issue, and no obligation on the Union to

25   notify Groth of the results of the arbitration.  The Union argues that there can be no

26   fraudulent inducement when, at the time of contract execution, neither party knows what

27   the future will hold or what alternatives might have existed to the agreed contract language.

28        Moreover, the Union asserts, Groth subsequently entered into the 2008 CBA, which,

United States District Court

For the Northern District of California

1   on its face, did not provide for any reduction to pension contributions.  Robin Groth-Hill

2   testified in her deposition that in April 2008, Groth's counsel Robert Hulteng told her that

3   the Union should have informed her of the result of the arbitration.  (Mr. Hulteng is also

4   counsel for the Northern California Auto Dealers Coalition, of which Groth is a member.)

5   Nevertheless, the Union notes, at no time between receiving this advice from Mr. Hulteng

6   and the time of signing the 2008 CBA in May 2008 did Groth seek to amend the CBA

7   language regarding pension contributions.

8        Similarly, the Union contends, there is no basis to find that the Union had a duty to

9   disclose any information to Groth about the arbitration or about the "rules" of the Trust.  The

10  Machinists Union and Groth were not in a confidential relationship, and the information

11  was presumably equally available to both parties.  The Union argues that absent an

12  identified duty to disclose (which appears nowhere in the CBA), there can be no claim for

13  fraud based on failure to disclose.  Moreover, the Union asserts, it is separate from the

14  entity that is the Trust, and had no obligation to provide Groth with legal information

15  regarding the Trust.

16       Finally, the Union argues that the damages claimed by Groth are speculative.  The

17  Union contends that nothing in the 2006 CBA requires a reduction in pension contributions,

18  as it provides only that the parties shall "meet to discuss changes/reductions."  The Union

19  claims that the use of the phrase "meet to discuss" shows that there was no agreement

20  between the parties at the time the contract was entered into as to what the result of such

21  discussions would be, and also shows that any of a number of alternatives might be on the

22  table.

23       The Union contrasts the above-cited provision in the 2006 CBA with the language in

24  the 2008 CBA, which provides for the $586.66 monthly contribution, but also states that "[i]f

25  during the term of this agreement the Employer gains the ability to reduce pension

26  contributions, any amount of said reduction over [a certain amount] will be allocated to the

27  employees in the form of a monthly check or contribution to the Machinists 401K plan."

28  This CBA was executed on May 8, 2008, which was after Groth had learned of the result of

United States District Court

For the Northern District of California

1   the arbitration.  Thus, the Union argues, Groth's refusal to pay contributions under the

2   present CBA cannot be said to be related to the prior CBA, which provides the basis for the

3   fraud claim.

4          In opposition, Groth argues that the fraud and negligent misrepresentation claims

5   are not preempted because the court does not need to interpret the CBA in order to resolve

6   them.  Groth asserts that while the CBA may be evidence of fraud, it is by no means the

7   only example of the Union's fraud.  Groth claims that the Union defrauded Groth by stating

8   that "there's this freeze and rule out there," and that Groth could not reduce its rate of

9   pension contributions.  Groth asserts that it is undisputed that in 2006, there was no rule

10  prohibiting reductions in employer contributions.  Groth asserts that there is no need to

11  interpret CBA to show that such misrepresentations are fraudulent.

12         Groth also contends that it has pled and proven the elements of fraud, although it

13  also argues that the question of reasonable reliance is a factual issue that is not

14  appropriate for summary judgment.  Groth argues that in asserting that the fraud claim is

15  based on an allegation that the Union misrepresented the outcome of the arbitration, the

16  Union has misconstrued the fraud claim, because the fraud claim is in fact based on the

17  Union's fraudulent misrepresentations during contract negotiations – the representations

18  regarding the Trust Fund's contribution "rules."

19         Nevertheless, Groth asserts that its reliance on Andrews' representations about the

20  "rules" of the Trust was reasonable because Robin Groth-Hill had a long-standing

21  relationship of trust with Andrews, and had no reason to doubt his word.  Groth does not

22  respond to the Union's argument that Groth's reliance on the representations (or non-

23  representations) concerning the arbitration was not reasonable, but simply asserts that the

24  fraud claim survives even if its reliance on Andrew's representations concerning the

25  outcome of the arbitration was unreasonable, and even if the Union had no duty to disclose

26  the results of the arbitration.

27         The court finds that the motion must be GRANTED as to the fraud claim.  First,

28  Groth cannot prove the elements of fraud.  Groth effectively conceded in its opposition that

United States District Court

For the Northern District of California

1   it did not justifiably rely on the Union's statements about the outcome of the arbitration, and

2   has provided no evidence to support its claim that it justifiably relied on the statements

3   made by Andrews during the negotiations for the 2006 CBA.

4        Groth argues, however, that Andrews lied about the existence of a purported Trust

5   Fund "rule" prohibiting a reduction in the contribution amount; and that Groth relied on

6   those alleged lies when it agreed not to reduce the pension contribution in the 2006 CBA.

7   Groth asserts that this case is similar to Rozay's Transfer II, where the Union failed to

8   inform Groth of the existence of a material fact – the fact that there was no "rule" prohibiting

9   reductions in contributions.  Groth claims that the Union's "omission" here is

10  indistinguishable from a Union's omission of a Trust Fund's decision regarding the

11  collection of delinquent contributions.

12       Groth supports its argument regarding the fraud claim with citations to deposition

13  testimony from Robin Groth-Hill and Craig Andrews, most of which is summarized above in

14  the "Factual Background" section.  When Andrews was asked what he said to Robin Groth-

15  Hill, he responded, "Most likely that the Trust – or the employees did not want to have any

16  reductions in their pension, and I was under the impression that we could not reduce

17  pension."  He then added in response to a follow-up question, "No, I don't believe in

18  reduction.  The Trust Fund – and unfortunately, after we've gone through this – does allow

19  a reduction of $25.  But as a business representative representing the employees, there

20  was no rule about reductions."

21       This exchange supports the Union's position, as Andrews testified that it was his

22  impression that the contributions could not be reduced.  Andrews also testified that he did

23  not recall telling Robin Groth-Hill that the Trust Fund would not allow her to reduce the

24  pension, but that what he did recall telling her – based on his communications with the

25  employees – was that the employees did not support Groth's proposal to reduce the

26  pension contributions.

27       The 2006 CBA contained a specific reference to the potential outcome of the

28  arbitration proceeding.  Thus, Groth, as a party to the CBA, knew that the issue of

United States District Court
For the Northern District of California

1   reductions in contributions was disputed, and that the Trustees were seeking resolution of

2   this contested issue in arbitration.  The CBA plainly reflected the parties' agreement that if

3   the Arbitrator ruled in favor of management, Groth and the Union would "meet to discuss

4   changes/reductions."  Because the resolution of the issue was not clear at the time of the

5   contract negotiations, Groth could not have reasonably relied on the statements made by

6   Andrews during the contract negotiations in 2006 for what happened in subsequent

7   negotiations for the successor agreement in 2008 (after the Arbitrator's decision was

8   reached).

9          Moreover, even if there were misstatements in 2006 (which is not clear), the events

10  surrounding the February 2007 arbitration hearing and subsequent decision, and Groth's

11  participation in an industry organization directly involved in the dispute, mitigate any

12  misstatements made in 2006.

13         Similarly, the motion is GRANTED as to the negligent misrepresentation claim.

14  Groth, in essence, is claiming that the Union should have told it about the results of the

15  March 30, 2007 arbitration decision a full year before the parties consummated the 2008

16  Agreement, which is the Agreement that Groth now concedes that it breached.  However,

17  Groth does not explain why the Union had any obligation to notify it of the decision, given

18  the involvement of Mr. Hulteng, Groth's attorney, in the arbitration proceeding, where he

19  was counsel for the Employer Trustees.

20         Moreover, in contrast to the situation in Rozay's Transfer II, where the union

21  deliberately withheld from the employer the fact that the trust fund had already determined

22  prior to the execution of the CBA that it would not waive the collection of delinquent

23  contributions, neither party in the present case knew the outcome of the arbitration at the

24  time that Groth signed the 2006 CBA.

25         The court in Rozay's Transfer II also found that the employer would not have signed

26  the CBA if it had known that the Trust Fund would not waive the delinquent contributions.

27  Here, there is no evidence that Groth would not have signed the CBA if it had been aware

28  that the Trust Fund's "rules" did allow for a reduction in pension fund contributions.

**United States District Court**
For the Northern District of California

1    Moreover, Andrews testified to the effect that the employees did not want the pension

2    contributions reduced.  Finally, Groth cannot prove reliance, because the CBA contained

3    language addressing what would be done in the event that the Arbitration went in favor of

4    the Employer Trustees.  That is, the parties would meet and discuss a possible reduction.

5          With regard to preemption, the Union argues that Groth appears to be attempting to

6    assert a tort claim under § 301 based on negligent misrepresentation or fraudulent

7    concealment, and that this theory has been rejected by the courts, most recently by the

8    United States Supreme Court in Granite Rock Co. v. International Bhd. of Teamsters, 130

9    S.Ct. 2847 (2010).  The Union also contends, as indicated above, that the resolution of

10   Groth's tort claims will require the court to interpret the CBA.  Groth argues, however, that

11   the fraud and negligent misrepresentation claims are not preempted because the court

12   does not need to interpret the CBA in order to resolve either claim.  The court is not entirely

13   persuaded by the Union's argument that the fraud and negligent misrepresentation claims

14   are preempted by LMRA § 301, but need not resolve this issue in light of its other rulings.

15         Finally, the court finds that there is no basis to support an indemnification claim,

16   given the failure of the other claims.  Accordingly, the motion is also GRANTED as to the

17   fourth cause of action.

18         Moreover, Groth alleges fraud in connection with the negotiations surrounding the

19   2006 CBA, but the Trustees are seeking delinquent contributions due and owing to the

20   Pension Trust Fund in connection with the subsequent 2008 CBA.  Groth does not (and

21   cannot) claim that the alleged fraud from the negotiations over the 2006 CBA carried over

22   to the 2008 CBA.  For this reason, the facts do not support a claim for indemnification,

23   because there is no connection between the events surrounding the negotiation for the

24   2006 CBA, and Groth's failure to pay contributions owing under the subsequent 2008 CBA.

25                                            **CONCLUSION**

26         In accordance with the foregoing, plaintiffs' motion for summary judgment is

27   GRANTED in part and DENIED in part; and the third-party defendants' motion is

28   GRANTED as to the four causes of action alleged in the third-party complaint.

1       No later than April 27, 2011, plaintiffs shall submit a declaration supporting the

2  amounts of delinquent contributions and interest owing as of that date, along with a

3  proposed order.  In addition, while the court makes no findings in this order as to injunctive

4  relief, it is an appropriate remedy, and any proposal regarding injunctive relief shall also be

5  included in the proposed order.  Plaintiffs shall meet and confer with Groth regarding the

6  proposed order prior to submitting it to the court.

7

8  **IT IS SO ORDERED.**

9  Dated:  April 11, 2011                                    _____

10                                                            PHYLLIS J. HAMILTON
                                                              United States District Judge